```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SHAHED HAWKINS and KENNETH ZUBLIONIS,
on behalf of themselves and on behalf of a proposed class
of similarly situated individuals,

                    Plaintiffs,
                                                          ORDER ADOPTING REPORT
        - against -                                        AND RECOMMENDATION
                                                           16-CV-4265 (RRM) (CLP)
JAMAICA HOSPITAL MEDICAL CENTER
DIAGNOSTIC AND TREATMENT CENTER CORP.,

                    Defendant.
----------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.
```

Shahed Hawkins and Kenneth Zublionis bring this putative class action against Jamaica Hospital Medical Center Diagnostic and Treatment Center Corp. ("Jamaica Hospital" or the "Hospital"), alleging that it collected their genetic information in violation of the Genetic Information Nondiscrimination Act ("GINA"). Both plaintiffs are former employees of Jamaica Hospital, who were asked to fill out forms about their genetic information when applying for their respective positions at the Hospital. Both plaintiffs have since left their jobs at Jamaica Hospital. They seek damages on the basis that the Hospital collected their genetic information in violation of GINA, as well as an injunction, directing the Hospital to destroy the genetic information it still possesses.

The plaintiffs moved for class certification. This Court respectfully referred the motion to Magistrate Judge the Honorable Cheryl Pollak for a report and recommendation ("R&R"). Before the Court is Judge Pollak's R&R, which recommended: (1) denying class certification with leave to renew after discovery; (2) finding that the plaintiffs have standing to bring their claim for damages; and (3) finding that the plaintiffs do not have standing to bring their claim for

injunctive relief. The plaintiffs do not object to the first two recommendations, but object to the R&R's recommendation about their standing to seek injunctive relief.

## STANDARD OF REVIEW

Where a party objects to an R&R, the Court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). A court will review an R&R *de novo* only if the objecting party "point[s] out the specific portions of the report and recommendation to which that party objects." *Fouche v. Schneiderman*, No. 14-CV-752 (NGG) (LB), 2015 WL 1258288, at *1 (E.D.N.Y. March 17, 2015) (internal citations and alterations omitted). The Court reviews all of the unopposed portions of the R&R for clear error. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).

## DISCUSSION

### I. Clear Error Review

Neither party has objected to the R&R's two recommendations that class certification be denied at this juncture and that the plaintiffs have standing to bring their claim for damages. Accordingly, the Court reviews these portions of the R&R for clear error only. Finding none, this Court concurs. Thus, the Court first denies the plaintiffs' motion for class certification with leave to renew after discovery. Second, because the plaintiffs have sufficiently alleged a concrete injury, this Court finds that the plaintiffs have standing to bring their claim for damages.

### II. *De Novo* Review

The Court reviews *de novo* the portion of the R&R that recommended that this Court find that the plaintiffs do not have standing to seek injunctive relief. To satisfy the Article III standing requirement, the plaintiffs must demonstrate (1) "injury in fact;" (2) a "causal

2

connection" between that injury and the offending conduct; and (3) a likelihood that a favorable decision will redress the plaintiffs' injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Strubel v. Comenity Bank*, 842 F.3d 181, 187–88 (2d Cir. 2016). The injury alleged must be "actual or imminent, not conjectural or hypothetical." *Strubel*, 842 F.3d at 188 (quoting *Lujan*, 504 U.S. at 560). The plaintiffs' standing to seek injunctive relief depends on the likelihood that they will "suffer future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *accord Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

In their motion to certify the class, the plaintiffs argued that they are entitled to "an injunction restraining Defendant from engaging in any such further unlawful conduct; and . . . an order directing Defendant to remedy its unlawful employment practices." (Pls.' Mem. (Doc. No. 34) at 22.) They focused their request for injunctive relief on an order barring the Hospital from collecting genetic information in violation of GINA. As Judge Pollak correctly found, plaintiffs do not have standing to seek this relief because they have provided no indication that they will ever re-apply for their old jobs. Moreover, plaintiffs acknowledge that Jamaica Hospital has ceased its policy of asking job applicants about their genetic information. Accordingly, the plaintiffs have not shown that they are "likely to be harmed again in the future in a similar way." *See Nicosia*, 834 F.3d at 239.

However, in their objection to Judge Pollak's R&R, the plaintiffs argue, for the first time, that the Hospital's *retention* of their genetic information poses harm, which they now claim accords them standing to seek injunctive relief ordering the Hospital to destroy that information. (Pls.' Ltr. (Doc. No. 50) at 1, 2.) The plaintiffs offer two theories about how the retention of their genetic information injures them.

First, retention enables the Hospital to "revert back to requesting" genetic information in the event that the plaintiffs ever re-apply to work at the Hospital; and second, the retention in itself is harmful. (*Id.* at 2.) However, this alleged injury is simply too conjectural to demonstrate actual injury for the purposes of Article III standing. The theory is premised on two speculative actions: that the plaintiffs re-apply, and that, in response, the Hospital would revert to requesting their genetic information. As already noted, plaintiffs have not re-applied for their jobs at Jamaica Hospital, and none of their papers indicate that they intend to so do.

As for their second theory of harm, plaintiffs maintain that the retention itself is injurious. However, plaintiffs have not identified how the retention injures them for the purposes of Article III standing. The plaintiffs' claim is essentially that if mere collection of their genetic information is an injury that confers standing to seek *damages*, then retention of that information is similarly injurious to seek *injunctive* relief to have it destroyed. This argument loses sight of the core purpose of GINA and Congress's intent in protecting employees from a risk of discrimination.

The plaintiffs have standing to bring their claim for damages because the risk of discrimination based on an improper use of their genetic information is a sufficient injury to seek damages. In *Strubel*, the Second Circuit found that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." 842 F.3d at 190 (internal quotation marks omitted). Such is the case here: the risk of real harm that plaintiffs experienced while employed at the Hospital is the injury itself. In passing GINA, Congress noted that modern "advances in genetics . . . give rise to the potential misuse of genetic information to discriminate in health insurance and employment." 42 U.S.C. §

2000ff note (2012). In other words, barring the collection of genetic information serves to protect an individual's concrete interest in avoiding discrimination on the basis of this information, the core goal of GINA.

The statutory violation in this case demonstrates a risk of real harm, and, as such, the allegation of a statutory violation confers standing without additional allegations of harm. *Cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) (noting that the collection of an incorrect zip code, without more, does not create the risk of a concrete harm). It is this risk, which Congress identified, that confers standing; therefore, the plaintiffs here did not lose standing simply because they left their jobs, and the risk never materialized. The plaintiffs can seek damages to compensate them for the injury or harm they sustained because of the collection their genetic information.

By contrast, the risk involved in the Hospital's retention of the plaintiffs' genetic information, the basis for their claim to injunctive relief, is very different. While past injuries "may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239. Thus, plaintiffs cannot rely solely on the injury they may have suffered while working at the Hospital.[1] Rather, they must demonstrate some type of non-speculative, present injury or, at the very least, they must show that they will certainly be exposed to an increased risk of misuse of their genetic information. "While 'enhanced risk' of future injury may constitute injury-in-fact in certain circumstances, such injuries are only cognizable where the plaintiff alleges actual future exposure to that increased risk." *See Nicosia*, 834 F.3d at 239. Plaintiffs have not done so. As such, plaintiffs have not

---

[1] To the extent that the plaintiffs argue that the risk of discrimination exists because they might re-apply for their old jobs, this theory is too speculative to create a real risk of discrimination.

5

asserted a sufficient cognizable injury to confer standing with respect to the retention of their information.

The only case the plaintiffs cite for the proposition that retention alone harms them is a Ninth Circuit case, *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998). *Norman-Bloodsaw* is distinguishable in several ways. First, the injury in that case was capable of repetition. The Ninth Circuit specifically noted that the Department of Energy still required the laboratory to conduct pre-placement examinations, which the lab had used to obtain sensitive medical information without consent. The court therefore found that there was a "reasonable possibility that [the laboratory] would again conduct undisclosed medical testing." *Id.* at 1275. Because of this reasonable possibility, the court granted injunctive relief, ordering, among other things, that the laboratory destroy the results of the illegal tests upon an employee's request. *Id.* at 1275.

In this case, by contrast, there is no indication that the plaintiffs intend to re-apply for their old jobs; the Hospital no longer uses the form that asked job applicants about their genetic information, and the plaintiffs have provided no additional evidence that the Hospital would again request such information from prospective employees, or that it currently uses the information in an injurious manner. As a result, it is not clear how the injury could be repeated or how the plaintiffs would be injured.

Furthermore, the defendants in *Norman-Bloodsaw* obtained the plaintiffs' medical information through "the non-consensual retrieval of previously unrevealed medical information that may be unknown even to the plaintiffs" in violation of their "constitutionally protected privacy interest." *Id.* at 1269. The defendants collected this information in "an unconstitutional and discriminatory manner." *Id.* at 1275.

6

Here, by contrast, the Hospital committed a procedural violation of GINA by collecting the plaintiffs' genetic information through a questionnaire; there is no allegation of discrimination. (*See* Am. Compl. (Doc. No. 19) ¶¶ 47–48.) Though the plaintiffs here have identified how the *collection* of their genetic information injured them, they have not done so for the *retention* of their information.

Accordingly, upon *de novo* review, the plaintiffs' objections to Magistrate Judge Pollak's R&R are overruled, and this Court concurs with Judge Pollak's standing analysis in full: the plaintiffs have standing to seek damages on the basis that the Hospital collected their genetic information, but do not have standing to seek injunctive relief.

## CONCLUSION

For the reasons stated above, Magistrate Judge Pollak's well-reasoned Report and Recommendation (Doc. No. 47) is adopted in its entirety. This case is recommitted to Judge Pollak for all pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York
March 27, 2018

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge